Mr. Dolan, when you're ready. Thank you, Judge. Good morning and may it please the Court. My name is Greg Dolan. I'm here representing the appellant, Ms. Sharon Thomas. The district court should be reversed because it misinterpreted Rule 12b-6 and misimplied Twombly by ignoring certain allegations and interpreting the complaint in the light most favorable to the defendant appellees rather than Mrs. Thomas as required by the federal rules. In the alternative, and I'll get to that argument with Court's permission a little later, in the alternative, at the very least, the Court should have allowed Mrs. Thomas at least a single opportunity to amend her complaint. I would try to focus my argument mostly on the FHA claim because the ADA and Rehabilitation Act claims mostly rise and fall together with the FHA, but at least at the outside I would note that it appears that both parties now agree that the district court erred when it held that, for this case, the exhaustion requirement applied to the ADA. So at least on that point, that was an error of law that apparently no longer appears to be in dispute. And that's because it's not an employment case? Correct, Your Honor. Generally speaking, so this case was dismissed on Section 1915 because it's an informed purpose complaint, but as this Court has held, when a case is dismissed under 1915, it's reviewed in the same way as it's dismissed under 12b-6. And 12b-6 requires, all that it requires, even post-Twombly, the plaintiff to allege facts that give defendants fair notice of the claims and grounds. Specific facts are still not required, even after Twombly and the Supreme Court in the same term in Erickson held as much. In fact, Twombly itself held the complaint can proceed even if the ultimate claim is unlikely to succeed. So to the extent the district judge thought that the claim is not very plausible, to the extent that he thought that Salvation Army would ultimately come up with good reasons why Mrs. Thomas was denied housing, that's all well and good, but this is not an issue that should be resolved at this stage of litigation. All that should be required under an FHA claim is for the plaintiff to allege a discriminatory intent. And she could have done it either through direct evidence, alleging direct evidence, or more likely under a statute. What degree is a district judge under Twombly in assessing plausibility entitled to look at a litigation history? Here it's noted that Thomas has filed at least eight prior lawsuits in the western district of North Carolina and has prevailed on none of them. It says Thomas has filed five additional lawsuits in the middle district of North Carolina. And district court said if she continued to file harassing and vexatious lawsuits, it should be ordered to show cause while the district court should not issue a pre-filing injunction. And in assessing a district, in assessing plausibility under the Twombly decision, isn't the district court entitled to, in forecasting plausibility, entitled to take into account a history, in this case of something like 13 previous suits in North Carolina, a history of frivolous litigation? So, Leon, let me answer it in two parts, if you'll permit me. First, I'm not going to stand here and deny that Ms. Thomas has filed a number of lawsuits and prevailed on none of them, in part because she's a pro se litigant and had not had an advantage of being counsel. One of the jobs that attorneys do is counsel their clients not to file cases, not just to file cases, because they'll explain to them that this particular claim is unlikely to succeed. She hasn't had this opportunity. And while it may be legitimate for the district court to consider this history and ultimately issue a show cause order and perhaps ultimately an injunction against further filings without attorney, or at least without paying the requisite fee, I think it would be somewhat strange to say that every complaint now It can be a factor, though, can't it? Well, it might be a factor, perhaps it may be a factor on plausibility, but as Supreme Court has said and as this court has held, that plausibility is not the same thing as likelihood of success. So it's very Yeah, but there's got to be some relationship there. One of the things I wanted to ask you is you bear the burden of proof on the claim, and the claim does, and all the civil rights statutes are, and you know, you have to prove that some action was taken because of a prohibited characteristic. And the complaint alleges that there's a refusal to accord shelter under a variety of different actions because of mental disability, but looking through the complaint for the district judge, I was uncertain as to what the mental disability even was, or whether it was identified with the required specificity, because if these sort of vague allegations qualifies as a mental disability, maybe a huge part of the population is going to be said to have a mental disability. And I think that's a fair point, Your Honor. And again, so I'll answer it in two parts. First, I think I'm not sure how specific, you know, whether or not she, for example, needs to list a DSM-IV diagnosis in her complaint to qualify. How can they discriminate on the basis of a mental disability if we don't know a mental illness or disability? Well, the complaint does allege that the defendants knew of her mental status. It alleges that she provided them with the records, so even though perhaps she didn't put enough in the complaint, and again, I'm not quite sure that she would have to list her specific diagnosis in the complaint, whatever diagnosis she had, defendants knew about it, and she alleges that on Joint Appendix 13 and 14 that she was requested and provided the records to them. Furthermore, I think to the extent that the Court rules against us on this issue, that it concludes that she needs to allege a specific illness and specific limitation. It needs to be more specific than here. This was vague, and I noticed, if they're discriminating on the basis of mental disability, not only do I have a difficulty about what the mental disability actually is, it seemed that the explanation from the area commander of the Salvation Army was willing to reassess and take her in if it says, if you receive a mental health evaluation and stabilization services from Behavioral Mental Health prior to seeking admission to the shelter. In other words, they would like to know. They didn't just absolutely bar it. They said, well, tell us what the mental disability is and have an evaluation and make sure you've stabilized it and have it under control to the point that you're not a threat to other residents of this community. But this isn't some action of somebody who's out to discriminate. It's saying, tell us what your problem is and that it's under control. Fair point, Your Honor. Except that, at Joint Appendix 19 and 20, Ms. Thomas does allege that she, this was actually not the first time this request was made, that she did go to a mental health professional, did get an all clear, did provide an all clear to the Salvation Army, and was refused housing anyways. Yeah, I wanted to follow up on that because when I read through the record and the case, it appears that what she did is go to an emergency room where an emergency room doctor certified that she, at that time, was not a danger to herself or others and then let her go. She wasn't in that emergency room very long at all from what I could see, and I'm not sure that that was the kind of evaluation that you're arguing fulfilled the request from the Salvation Army. Well, Judge Keeley, and again, so maybe it may or may not be true, but the point is that they did ask for this one for an all clear. She got one. They didn't necessarily specify, well, you have to go to this doctor or that doctor. This is the point. I mean, the Salvation Army has an obligation to the other residents, too, and if they admit somebody without full information, then an incident occurs. They're going to be involved in another lawsuit for failure to protect, and the argument is going to be, well, look, Congress provided you a safe harbor to screen out people who might be a threat to other residents, and you didn't take advantage of this, and you let this person in, and you failed to screen sufficiently. You let someone in who was a danger despite the fact that you had a statutory safe harbor, and this individual attacked or did whatever to other residents, and you've got you're facing enormous liability, and so they have to be careful about who they admit. They have to be cautious. Just a basic concern for the well-being of those who are sheltered requires that they not admit someone who would pose a danger, and all they're saying is give us a fuller, and I agree with Judge Keeley's point that the visit to the emergency room is not, is just the kind of brief thing. They need to be careful. Judge Wilson, I agree with almost everything you say. That's exactly right, except that whether or not she did constitute, she did pose a danger, whether or not she was unstable, it's an issue of fact that's simply not appropriate for resolution prior to discovery. Well, let's take, and you're right. It is a liberal construction and is a pro se, and, for example, the commander says at one point that she exhibited disrespect and hostility toward the staff. In the next sentence, Ms. Thomas claims that there were no instances of incidents of conflict with staff or residents on the part of the plaintiff. So we've got a factual dispute. That's exactly right. In fact, she does it more than once. She says that she followed all the rules and that she had no conflict, that she was respectful to the staff. She says it on JA 1314, on 17, on 19 and 21. So at least four separate times she denies any problems. Now, and again, I'm not sure that she would actually prevail once we get to summary judgment. It very well may be that Salvation Army will be able to adduce evidence that Ms. Thomas will not be able to rebut. But at this stage, she at least alleges that at various stages of interaction with Salvation Army, they gave her at least four separate reasons as to why she got expelled. At one time she said it was because she violated curfew. Another time they gave this sort of amorphous reason that she's not a good fit. And yet another time she said it was because of your mental health problem. She gave a very specific reason. At a previous intake proceeding, there was a great deal of hostility toward the staff. And because of that hostility, they were ‑‑ she was asked to leave the facility. Right. So that's the fourth reason. So the third one is mental health. And so maybe that's the danger reason. And the fourth one is the hostility and disrespect. And as this Court has held, the mere fact that there's multitude of reasons being offered is in and of itself prohibitive that these reasons are pretext. Again, I'm not saying that they ultimately will be proven to be pretextual. But we are at the stage where the defendants did not want to file an answer. The trial judge looked at this complaint and dismissed it sui fonti because the trial judge read the complaint and credited it and drew all the inferences in favor of Salvation Army. So, for example, when the trial court read the quote that Mrs. Thomas put from the section commander, they said, well, she admitted it. She didn't admit it. She simply quoted it. You know, you can ‑‑ we can debate Mrs. Thomas for a long time. But the question is, when they have some record or concern about hostility to staff, I can't see that that's pretextual. When you look at this and you read this letter as a whole, what they're saying is there's a record here of hostility toward the staff in a previous intake facility. And there may be mental health challenges, but far from discriminating on the basis of those, they said get a mental health evaluation and stabilization and let's see where we are. It's just they're exercising nothing more than basic prudence. And Congress has, time after time after time, in the FHA and in the ADA and in the Rehabilitation Act and Title III, they're saying nothing requires that a dwelling, assuming this is a dwelling, which is another question we would have to answer in order to reverse, but nothing in the FHA or the ADA requires an individual to participate who's going to pose a danger to the health or safety of others. So Congress was aware in statute after statute after statute of this precise problem. And what you have here is an entity that is simply trying to be prudent. And, Your Honor, I completely agree that that would be a complete defense if it were true. And that is just inappropriate for resolution at this stage of litigation. Let me, and I'm running out of time, but let me sort of make one quick point about emergency room and cell. She was indeed asked, as Judge Keeley asked and, Your Honor, as you followed up on, she was indeed asked at stabilization, but she did. And there's, she denies at any point that she was dangerous to anyone. And ultimately, once all the facts are in. So whether it's true or whether it's not true, how do you get to the point that these folks are discriminating on the basis of some mental health condition that has not been, that's not been addressed? If you permit me, I'll run into a bit of my rebuttal time, but let me sort of answer this fairly quickly. Mrs. Thomas alleges at J13 and 17 that people who were expelled from the church and the city shelter were offered an alternative shelter and she was not. Now, again, it may be ultimately that she's factually incorrect, that the submission will be able to show that actually she's wrong, that people were not offered alternative shelter. But at this point, she alleges that despite being expelled, everybody else in the similar position was offered a different shelter and she was not. And so it's the disparate treatment that provides additional evidence for her at this stage. And unless there's any questions, I would like to reserve the balance of my time for rebuttal. Any further questions? All right. We're fine. Thank you, Your Honor. May it please the Court. My name is Matthew Lincoln here on behalf of Salvation Army. And what this case is about is Ms. Thomas who, as you know, found herself in very unfortunate circumstances in 2012. And by those unfortunate circumstances, I'm, of course, referring to her homelessness. In her time of need, she turned to an organization that she believed could help her, and that was the Salvation Army, which operates a homeless shelter for women and families in the Charlotte, North Carolina area called the Center of Hope. And her brief encounter with the Salvation Army Center of Hope did not turn out as she would have liked, but what did take place in that brief encounter was simply not unlawful. And that's what's at the heart of this appeal. Has Ms. Thomas sufficiently pled discrimination claims under the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act? One thing that encompasses or goes across all of her claims is her claim for injunctive relief. We briefed the fact that we do not believe Ms. Thomas has adequately pled standing to obtain injunctive relief. The last alleged act of any of the Salvation Army defendants was October of 2012. That's Joint Appendix, page 22. The complaint was not filed until a year and nine months later. There are no allegations of Ms. Thomas's personal circumstances in that interim period. We simply don't have a lot of controversy here where there is an immediate threat of future harm such that she would be entitled to injunctive relief. I think you're correct on that standing question on the ADA, but the trial judge dismissed this case. Sui sponte wouldn't give her a chance to amend. You know, if she had an attorney, she probably could come back and clean up some of the concerns my colleagues have, don't you think? I do think that you're correct in that she was not given a chance to amend. I will note that the complaint actually admits why she filed the complaint, and it was due to her persisting and distressing memories about what happened back in 2012. That's at Joint Appendix, page 24. And as was discussed by opposing counsel, I do think that Ms. Thomas's litigation history absolutely played a relevant role in the district court's decision here in dismissing the claims with prejudice, which would preclude an amendment. I know you can disagree about this or that and the rest, but the ultimate question is, at the end of the day, was this entity discriminating against her on the basis of mental illness? And if the mental illness is not identified, and the purported discriminator is saying, just give us a mental health evaluation and show that it's stabilized so there wouldn't be a repeat of the hostile interactions with the stayer, that's not discrimination. And that's just acting responsibly to make sure that your charge of safeguarding the safety of homeless residents is carried out. I would wholeheartedly agree with Your Honor, and I think that the statute even speaks to that in Section 3604F9, and the requirement that Ms. Thomas undergo a mental health evaluation would merely be a prophylactic measure to protect the other residents and the staff working at the center. I mean, if they'd said, heck no, you're not going to be in here, you're mentally ill, there's no way you're coming in that shelter, but that's not what they said. They said that we have concerns based on the history here and the hostility here, and we want to alleviate those concerns with further information. That's not discrimination. Again, I will wholeheartedly agree, and I do think the fact that the statements were made to Ms. Thomas by the Salvation Army staff, the fact that they are included in the record in the complaint, we have to accept the fact that those statements were made as true and they absolutely should play into the plausibility analysis under Iqbal and Twombly. And the complaint is lacking in this nexus between her alleged mental disability, of which we have no details, and the alleged discrimination. It's that causal link we simply lack here. And I will also note that the Salvation Army's response brief included several cases indicating that where the mental illness that is at the basis of the alleged discrimination has not pled with specificity details about what type of mental illness it is and how it led to her. I mean, those are the elements of the claim. I mean, I think my good colleague, Judge Floyd, is absolutely right about the need for solicitude toward pro se complainants and the need in normal circumstances to request a response. But where you have someone with this kind of litigation history who's just throwing suits up against the court and you have the basic elements of the claim, which is to identify the characteristic that form the basis of the discrimination and show some causation with discrimination, when that's not there and you let those cases go forward, every charitable organization in the circuit is going to say, oh gosh, if we don't let these folks in, we're going to face protracted legal proceedings. And it's going to take time from the personnel and it's going to take resources, which donors have contributed in the hopes that they would do some good in terms of sheltering the homeless. It's almost as if protracted litigation can reach the point where no good deed goes unpunished, regardless of who prevails. I think that's right, Your Honor. And speaking again about Ms. Thomas' litigation history, I, out of curiosity, went on to pace her and checked out some of her former lawsuits that she's filed, all of which have been dismissed. And I likely didn't find them all, but I found at least three cases where Ms. Thomas filed a motion to amend her complaint while a motion to dismiss was pending. Judgment was later entered for the defendants. The plaintiff then filed a post-judgment motion for reconsideration, which was denied. After the case was appealed, this Court affirmed the district court in at least three instances. That was case 13-1898, 12-2563, and 13-1325, where that procedural sequence of events happened. And I'd also note that the plaintiff filed another lawsuit as recently as three months ago in the Western District of North Carolina against the university. This is another lawsuit? Not against my clients, Your Honor, just another lawsuit that she has filed. Thomas v. University of North Carolina, filed in June of this year. That case has since been dismissed with an order from Judge Mullen, including the same exact frivolous, vexatious-type lawsuit warning that was issued by Judge Conrad in this case. That order, Your Honor, has been appealed to this Court, and this Court can look forward to dealing with that case as well in case number 16-1993. As to the claims under the Fair Housing Act, I do want to at least briefly get on those issues. If we were to reverse here, we would have to take up the sticky question about whether the Salvation Army is a dweller and whether M.S. Thomas is a renter, would we not? Absolutely, Your Honor. Affirmance doesn't require us to get into that, but if we reversed, and that's a very sticky question, we would further a level of blow at these charitable institutions by holding that this individual was a renter, despite the fact that there's no payment of rent, and that it's a dwelling. I would prefer not to get into those questions, because I think they're tricky, if we don't have to get into those questions. And I'm not one for going out and looking for trouble, and those questions strike me as very difficult, very close, very tricky. And I don't want to wade into them for something that's not going anywhere. Understood, Your Honor. And I can absolutely discuss these issues as little or as much as you would like. On the renter piece, I do think there is one case that is very helpful and would be instructive to this Court, if it chooses to get to that issue, and that's the Hunter v. District of Columbia case, 64 F. Sup. 3rd 158, a 2014 case out of the District for the District of Columbia. And there the Court was looking at claims under 3604 F. 1 as well as 3604 F. 2. The Court in that case was okay with the fact that the homeless shelter at issue, having received governmental funds, being sufficient to render their or deem their being a rental. But 3604 F. 1 also requires that the plaintiff also be deemed a renter. You've got courts going the other way on this question. And, you know, I don't want to narrow a civil rights statute unless I absolutely have to. And I just don't want to get into it on behalf of a litigant. Why would we get into it on behalf of a litigant who's filed frivolous actions after frivolous actions after frivolous actions and try to reach something like that when the complaint itself has infirmities. And is not ultimately going anywhere. I just don't know that that's a good expenditure. Absolutely, Your Honor. To reach a case where ultimately it might matter. Your Honor, again, I have some more discussion, but I am more than willing to forego my remaining time. Hold on, because if my colleagues have any questions for me, you're going to stay up there. Well, just to make the point, she was required to perform chores, which would get you to consideration. And contrary to your assertion, there are a lot of cases out there that hold that this is a residence. And she was offered to stay there for three months and stay there longer. At one point during all the discussion, so I am not so much worried about getting to those points. We'll save it. To that point, Your Honor, I would just say that she has alleged that her stay at the Salvation Army Center of Hope was only five days. There was a later allegation that if she were to come back to the Center of Hope, her stay would be limited to three months. But on the issue of consideration, this is not a situation where we're looking for a peppercorn to decide if a contract is supported by adequate consideration. We're trying to determine whether she was a renter as contemplated by the Fair Housing Act. So I think there's a distinction there. The other thing I would mention is that she alleged in a single allegation, joint appendix page 11, that she was required to do chores at the Salvation Army. That's all she has to say with respect to my client. She does include detailed allegations with respect to chores and work that she did for the Victory Christian Church and the church in the city. I do not represent those entities. And so to the extent those allegations as to that work certainly cannot constitute consideration as to my client and her being deemed a renter at the Center of Hope. The other thing I would add on that point is that the chores were required, and she alleged that they were required. As opposed to chores equaling rent, I like to think of the chores being her simply following rules. These homeless shelters, as you can imagine, are very difficult to manage. There's a lot of people there. She alleged in her complaint that they were extremely crowded. I guess it will be open to her if she does what they say and got a mental health evaluation and showed it was stabilized. I believe that's in the complaint. Again, this very day, access would be available if she provided some information about the fact that she wasn't going to be. I mean, if we talk about ongoing harm, what need is there to put an injunction on a place where you – I mean, they let her in to this day if she provided some mental health evaluation and something that was solid that they could assure themselves. But there's no bar as of this instance, is there? There's certainly none in the record, Your Honor, and I think actually the record reflects the exact opposite, as you alluded to earlier in the letter from the area commander. I'd like to follow up with a question about the dismissal by the district court of these claims with prejudice at this early stage of the proceedings where there's no motion to dismiss filed and she has no notice that they're going to be dismissed with prejudice. Do you want to address that? Yes, Your Honor. That is absolutely correct. This complaint was dismissed sua sponte by the court. There was no motion to dismiss, briefed, or argued. But that certainly did not preclude her from filing a post-judgment motion to amend. And as I was mentioning earlier, her litigation history demonstrates a knowledge of the ability. How do you – what's the argument to move to amend after the courts dismiss them with prejudice? Well, I certainly think she could have still filed a motion whether it was with prejudice or without prejudice. For reconsideration maybe, but not to amend. In any event, I do believe that the district court made clear in their order the reason why they did that was due to the history of frivolous litigation. And they were absolutely within their discretion to do so. Well, suppose we were to affirm as modified and given instruction to affirm the dismissal with instructions to modify the judgment to have the dismissal without prejudice. Nearly without? Obviously, we would prefer the complete affirmation, Your Honor. And I think that the district court was obviously in the best position to determine, based on its review of the litigation history and the record in front of it, whether dismissal should be without or with prejudice. So I think that that's obviously what my client would prefer, and we think it would be the more appropriate decision here. We know that Ms. Thomas is a pro se litigant, but her litigation history, we believe, puts her on different footing, and the claim should be dismissed with prejudice. Your view is you just can't leave district courts defenseless in this kind of situation with this kind of litigation history, that you've got to back them up? Absolutely. And it just begs the question of when is the end? When is the end? Are we going to get another complaint followed by either another sua sponte dismissal by the court or a motion to dismiss that my client will file, and then we argue about using up further resources of the court and the parties and possibly even winding up in this court again one day? It does need to be put to an end, especially given the fundamental deficiencies in this complaint. Your view is that the with prejudice appellation, the with prejudice dismissal is not going to stop any litigation? Well, I think it would certainly provide a much easier basis with which to head off any future litigation. I'm not saying that it will stop it, Your Honor. Thank you, Your Honor. Your Honor, I just have a few points for rebuttal. My limited time. Let me first address Judge Wilkinson's question about whether or not the shelter remains open to this day. And again, I would just point out that she did seek evaluation, and I take Judge Keeley's point that emergency rooms are quick. They're quicker than, I suppose, a long-term observation by a psychiatrist. And I know it's not on the record, but during my medical days, that's what we did. When patients came into our psychiatric ER, we would either figure out that they're unstable, would keep them, or we would give them an all-clear saying they're not. So, actually, emergency rooms do that all the time. And so, even though it seems fairly quick, it's not that unusual. Those doctors who are on call, they do know what they're doing. So, the fact that they wrote this in a letter kind of ignores the allegation that she already was all-clear, and despite that, Salvation Army ignored that note from a doctor. Let's go to Judge Floyd's point and the interaction of Judge Floyd with my opposing counsel about the proper quorum of whether or not she's a renter. And I think a good analogy here is, for example, to a college dorm residence advisor. Those students, they don't pay for college dorms. They get to stay there for free in exchange for providing services to the college, taking, you know, looking after the junior students. And, surely, that would be considered a rental agreement, much like people who actually pay money for the dorms. So, yes, it's true Ms. Thomas didn't pay in cash, but she paid in her service. And, of course, Salvation Army – How do you know there are cases going both ways on this? I actually – the only case cited by the police is Jenk's case from the Southern District of New York, which was vacated by the Second Circuit, and it was the only case that I found that goes the other way. Every other case that I found sides with this proposition that I've just stated. So, yes, I agree with you, Judge Wilkson. It's a sticky issue that this court has never addressed, but it's a situation – you know, it is a situation where every other court has held consistent with our argument here. And then the final point in my last 40 seconds or so about amendment. Again, this is a case where there was no opportunity to amend. This court has held – Supreme Court has held multiple times that the only time a complaint should be dismissed with prejudice, without opportunity to amend even the first time, should be only when amendment would be futile. And to the extent this court believes that she should have alleged more about specifics of her mental illness or specifics of her particular work that she performed for Salvation Army or for Church in the City, that was fine. But those factual defects can be cured on amendment. This is not a situation – But she never looked to amend before the district court. Yes, so this is not a situation where no matter what she says, the complaint would be futile. So unless there are any further questions, I'm out of time. Thank you, Your Honors. We'll come down to the Greek Council and take a brief recess.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Irene M. Keeley